IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

ROMAN ANGELO ROYAL,                        §
                                           §
            Plaintiff,                     §
                                           §
v.                                         §          No. 5:23-CV-214-H-BQ
                                           §
SCURRY COUNTY, *et al.*,                   §
                                           §
            Defendants.                    §

## REPORT AND RECOMMENDATION[1]

Plaintiff Roman Angelo Royal encountered law enforcement officers in Snyder, Texas, which resulted in his arrest and subsequent conviction for aggravated assault of a peace officer and evading arrest. He now sues, among others, the City of Snyder (the City) and Snyder Police Department Chief of Police Brian Haggard under 42 U.S.C. § 1983, for excessive force and municipal liability, as well as under the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA). Defendants the City and Chief Haggard move to dismiss Royal's claims. ECF No. 34. Alternatively, Defendants ask that Royal be required to provide a more definite statement. *Id.*

Royal has not pleaded adequate facts establishing a plausible claim under the ADA and RA, and his municipal liability claim against the City is conclusory and devoid of factual support. Moreover, Royal has sued Haggard in the wrong capacity, to the extent he intends to assert an excessive force claim against Haggard personally. The undersigned therefore recommends that the United States District Judge grant Defendants' Motion to Dismiss under Rule 12(b)(6). The

---

[1] The Honorable James Wesley Hendrix, United States District Judge, referred this case to the undersigned for pretrial management, including issuing "a report and recommendation" on "dispositive motions." ECF No. 3.

undersigned further recommends that the district judge deny as moot Defendants' Rule 12(e) Motion for a More Definite Statement.

## I.    **Background**

### A.  **Procedural History and Royal's Factual Allegations[2]**

To evaluate Defendants the City and Haggard's (collectively, Defendants) Motion to Dismiss, the Court accepts as true the following narrative from Royal's Second Amended Complaint.[3] *See Richardson v. Axion Logistics, L.L.C.*, 780 F.3d 304, 306 (5th Cir. 2015). Royal apparently had an outstanding, "unverified misdemeanor warrant" issued by Mitchell County, Texas. 2d Am. Compl. 3, 6, ECF No. 29. On November 13, 2022,[4] Snyder Police Department (SPD) Officer Shane Rackley—not named as a defendant in this action—created a "Flock" alert to "alert him if and when" the vehicle Royal was driving "passed by any of the police department's camera[s] installed across Snyder, Texas." *Id.* at 6. The next day, Officer Rackley received an

---

[2] The Court focuses its recitation on the factual allegations against Defendants that are relevant to deciding their Motion to Dismiss.

[3] Defendants' Motion to Dismiss addresses the claims raised in Royal's Second Amended Complaint. *See, e.g.*, ECF No. 34, at 5, 10. Defendants apparently do not dispute that the Second Amended Complaint is the operative pleading. *See also* ECF No. 35 (Defendants Scurry County and Scurry County Jail's Answer to Royal's Second Amended Complaint). The Court observes, however, that Royal filed that pleading without leave and without an adequate basis in the rules. Defendants filed their initial motion to dismiss Royal's original Complaint (ECF No. 1) on January 5, 2024. ECF No. 18. In response, Royal filed a First Amended Complaint, which he was permitted to do under Rule 15. ECF No. 24; *see* FED. R. CIV. P. 15(a)(1)(B) (providing that a plaintiff may amend his "pleading once as a matter of course" in response to a Rule 12(b) motion). Three days later, he filed the Second Amended Complaint. ECF No. 29. But Royal did not seek leave of Court, nor does the filing indicate Defendants consented. *See* FED. R. CIV. P. 15(a)(2).

Rule 15 permits a plaintiff to amend his pleading "once as a matter of course" within "21 days after serving it, or if the pleading is one to which a responsive pleading is required, . . . 21 days after service of a motion under Rule 12(b) . . . , whichever is earlier." FED. R. CIV. P. 15(a)(1). "Once means once." *Merisier v. Johnson Cnty.*, No. 3:19-cv-2911-X-BN, 2020 WL 13856958, at *1 (N.D. Tex. May 26, 2020) (citation omitted). That is, "only one amendment as a matter of course is permitted." 6 Mary Kay Kane, *Federal Practice and Procedure* § 1483 (3d ed. Apr. 2023 update). By filing his First Amended Complaint, Royal exhausted his right to amend "as a matter of course." Nevertheless, because none of the Defendants apparently oppose Royal's second amendment (*see* ECF Nos. 34, 35), and leave to amend should be freely granted, the Court declines to strike the Second Amended Complaint and relies on the factual allegations therein in evaluating Defendants' Motion to Dismiss. *See* FED. R. CIV. P. 15(a)(2) (stating that "a party may amend its pleading . . . with the opposing party's written consent").

[4] Royal provides conflicting dates concerning the incident. 2d Am. Compl. 5, 29 (Nov. 11, 2022), 6, 15 (Nov. 14, 2022). The precise date does not alter the undersigned's conclusions herein.

alert and "enlisted the help of fellow [SPD] officer Mitchell Silva" to find Royal's vehicle. *Id.*
They soon located and "attempt[ed] to intercept" it. *Id.*

Royal "eventually" stopped the vehicle, but when the officers tried to identify him, Royal
"did not wish to be identified nor cooperate." *Id.* at 7. Royal was apparently "talking gibberish
and exhibiting signs of mental illness," i.e., paranoid schizophrenia. *Id.* at 3, 15. "After nearly 40
minutes" of trying "to positively identify the driver as Roman Angelo Royal," an officer poked a
hole in the driver's side window with a baton—an action ostensibly taken at Haggard's instruction.
*Id.* at 7, 31. Officer Rackley stuck his hand into the hole to pepper spray and/or tase Royal. *Id.* at
7, 31. In response, Royal "engaged the gas pedal and maneuvered the vehicle between a fence and
[an]other vehicle," "leaving the scene." *Id.* at 7.

Royal's allegations as to what happened next are confusing, contradictory, and sparse.[5]
But Haggard purportedly "shot at . . . Royal as he was driving away."[6] *Id.* at 31; *see id.* at 3, 4, 27.
Royal successfully fled from officers. *See, e.g., id.* at 10–11. "Several hours later," "Haggard
ordered a helicopter with night vision capacilites [sic] to search and seek out . . . Royal." *Id.* at 8,
10. Then, "Chief Haggard ordered officers to 'light him up' – [the officers] fired round after round
of rubber bullets, causing Mr. Royal to lose a tooth in the process, despite the fact he had his hands
up." *Id.* at 11 (cleaned up) [hereinafter Evening UOF]. Royal "had driven a tractor into a large
moat on a woman's ranch, and officers, at . . . [Haggard's] direction, forced Mr. Royal to jump off

---

[5] This is in part due to Royal's failure to comply with Rule 8, which provides that a pleading must include "a short
and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Royal's
"complaint is anything but short and plain. It includes extensive legal arguments and extraneous matters that do not
belong in a pleading." *Castillo v. Equifax Info. Servs., LLC*, No. 4:18-CV-557-A, 2018 WL 11430866, at *1 (N.D.
Tex. Sept. 18, 2018). Royal also repeats information verbatim throughout, resulting in the pleading being longer than
necessary. *See, e.g.,* 2d Am. Compl. 13 ¶ 25, 14 ¶ 28, 26 ¶ 64, 28 ¶ 68 (reciting the elements of an excessive force
claim). Making matters worse, not all of Royal's factual allegations are contained in the "Factual Background" section
but are incorporated into his "Argument" section. *See, e.g., id.* at 6–8, 10–11, 14.

[6] The Court refers to Officer Rackley's and Chief Haggard's actions collectively as the "Daytime UOF."

and swim to shore," despite Royal not knowing how to swim. *Id.* (cleaned up). And thereafter, they wrongfully took him to jail instead of "a mental hospital." *Id.* at 5.

As a result of this incident, Royal was charged with three offenses: (1) aggravated assault of a peace officer; and (2) two counts of evading arrest. *Id.* at 7–8. The first evading arrest charge arose from Royal's conduct during his initial interaction with SPD officers (Daytime Evading); the second resulted from Royal's contact with officers in the evening (Evening Evading). *Id.* Royal was convicted of aggravated assault and the Daytime Evading charges and is currently serving a prison sentence. *Id.*

Royal ostensibly raises the following claims against Haggard in his official capacity and the City: (1) failure to accommodate and disability discrimination under the ADA and RA; (2) excessive force; and (3) maintenance of unlawful policies and failure to train.[7] 2d Am. Compl. 18–36, 40–43. Royal seeks monetary damages and recovery of attorney's fees. *Id.* at 46–47.

After Royal filed his Second Amended Complaint, Defendants filed their Motion to Dismiss under Rule 12(b)(6). ECF No. 34. Royal did not file a response, instead submitting only a purported "Affidavit." ECF No. 40. Because the Court is evaluating the sufficiency of Royal's pleadings at the Rule 12(b)(6) stage, it has not relied on Royal's affidavit. Defendants did not file a reply to the Affidavit, and their motion is now ripe for review.

### B. Parties' Arguments

Defendants contend dismissal of all Royal's claims is appropriate. Defs.' Am. Mot. to Dismiss 17, ECF No. 34 [hereinafter Mot.]. First, Defendants ask the Court to dismiss Royal's claims against Haggard in his official capacity because they are redundant. *Id.* at 3. This is because

---

[7] The Court has only considered claims asserted against Haggard and the City—not those against Scurry County and Scurry County Jail, who are not parties to this motion. *See, e.g.,* 2d Am. Compl. 43 (asserting, *inter alia,* a policy claim based on the purported denial of adequate medical care "[a]gainst Scurry County and Scurry County Jail" (emphasis omitted)).

a suit against an officer in his official capacity equates to "an action against an entity of which [the] officer is an agent." *Id.* (citation omitted).

Next, Defendants argue that Royal has not pleaded adequate facts to state claims under the ADA and RA. *Id.* at 4–5. They observe that Royal "does not allege that [his paranoid schizophrenia] substantially limits a major life activity." *Id.* at 5. Defendants further state that Royal "has not pled he was excluded from participation in or denied the benefits of the services, programs, or activities of the City of Snyder, or was otherwise subjected to discrimination." *Id.* In Defendants' view, Royal merely avers officers should have transported him to the hospital rather than to jail, which does not implicate the ADA or RA. *Id.* at 5–6. Even if the Court finds Royal has stated an ADA/RA claim, Defendants assert the Court should require him to file a more definite statement in accordance with Rule 12(e). *Id.* at 6–7.

Turning to Royal's excessive force claim, Haggard contends that "[i]f any individual claims against [him] . . . are allowed to proceed," he "asserts [the] defense of qualified immunity and requests any discovery be limited until this issue is resolved." *Id.* at 8. Haggard maintains Royal has not shown that any purported use of force was excessive. *Id.* at 8–9. Thus, Royal cannot overcome the defense of qualified immunity. *Id.* at 9.

Haggard also alleges that Royal's claim is *Heck*-barred.[8] *Id.* at 15. According to Haggard, the charges of which Royal was convicted occurred in connection with the Daytime UOF. *Id.* at 16. And as to the Evening UOF, Royal "was still evading arrest from the morning"; therefore, his excessive force claims arise out of the event for which Royal was convicted. *Id.* at 16–17.

Finally, the City asserts Royal's municipal liability claims are deficient because Royal: (1) did not identify a specific policy or custom; (2) "fails to allege sufficient facts to demonstrate

---

[8] *Heck v. Humphrey*, 512 U.S. 477 (1994).

a causal link between any policy and the alleged constitutional violation"; and (3) has not pleaded anything other than a bare recitation of the legal elements as to any failure-to-train claim. *Id.* at 11–15.

## II.    Legal Standards

### A.  Motion to Dismiss under Rule 12(b)(6)

To survive a Rule 12(b)(6) motion, a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering 12(b)(6) motions, courts must accept well-pleaded facts (not mere conclusory allegations) as true and view them in the light most favorable to the plaintiff. *Twombly*, 550 U.S. at 555 (explaining that a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 520 (5th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678) (stating that courts accept all well-pleaded facts as true, but "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' cannot establish facial plausibility"). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations omitted). "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

### B. Qualified Immunity

Qualified immunity protects government officials performing discretionary functions from civil liability to the extent "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (describing standard for evaluating defense of qualified immunity when raised in a Rule 12(b)(6) motion); *accord Templeton v. Jarmillo*, 28 F.4th 618, 621 (5th Cir. 2022) ("Because the officers invoked a qualified immunity defense, the burden shifts to [plaintiff] to show the officers violated his clearly established rights.").

"Where public officials assert qualified immunity in a motion to dismiss, a district court must rule on the motion." *Carswell v. Camp*, 54 F. 4th 307, 311 (5th Cir. 2022). If "the pleadings are insufficient to overcome [qualified immunity], the district court must grant the motion to dismiss without the benefit of pre-dismissal discovery." *Id.* at 312. In deciding whether a defendant is entitled to qualified immunity, courts conduct a two-prong inquiry. *Club Retro, L.L.C.*, 568 F.3d at 194. Under the first prong, a court must decide whether the facts alleged, taken in the light most favorable to the plaintiff, show the officer's conduct violated a federal constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled in part by Pearson*, 555 U.S. at 236; *see Solis v. Serrett*, 31 F.4th 975, 981 (5th Cir. 2022) (quoting *Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019)) (describing the two-part inquiry). Under the second prong, a court must determine whether the constitutional right in question was clearly established at the time of the alleged misconduct. *Saucier*, 533 U.S. at 201. "The relevant, dispositive inquiry in

7

determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

A court may use its "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236; *see Solis*, 31 F.4th at 981 ("The court need not decide the first question before the second, and it may decide the case solely on the basis that the right was not clearly established."). When considering a qualified immunity defense raised in the context of a Rule 12(b)(6) motion to dismiss, a court must determine whether "the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (citation omitted); *see also Iqbal*, 556 U.S. at 678–79 (providing that a plaintiff must "state a claim to relief that is plausible on its face," absent statements that are "no more than conclusions," which "are not entitled to the assumption of truth"). Accordingly, the threshold question here is whether, accepting Plaintiff's properly pleaded factual allegations as true, Defendants violated Plaintiff's constitutional rights and, if so, whether Defendants' actions were objectively unreasonable. *See Backe*, 691 F.3d at 648; *Solis*, 31 F.4th at 981.

## III.    <u>Discussion</u>

### A. Royal's claims against Haggard in his official capacity should be dismissed as redundant.

Haggard asserts that Royal's official capacity claims against him should be dismissed as redundant because they are, in effect, claims against the City. Mot. 3; *see* 2d Am. Compl. 18, 21, 45 (asserting ADA and RA claims against the City and Haggard in his official capacity for money damages). The Court agrees.

An official capacity suit generally amounts to a suit against the entity of which the officer is an agent—e.g., a claim against Haggard in his official capacity equates to a claim against the

City. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (stating "that official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent" (internal quotation marks and citation omitted)). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

Thus, Royal's § 1983 claims against Haggard in his official capacity are redundant of his claim against the City and should be dismissed. *See, e.g.*, *Sanders-Burns v. City of Plano*, 594 F.3d 366, 373 (5th Cir. 2010) (observing that any claims against the city "would render any official capacity claim against [officer] redundant"); *Goad v. Lyde*, No. 7:23-cv-00063-O, 2024 WL 1078225, at *3 (N.D. Tex. Mar. 12, 2024) (dismissing official capacity claims against sheriff as redundant of claims against the county); *Smith v. City of Dallas*, No. 3:18-cv-01684-K (BT), 2019 WL 3719039, at *2 (N.D. Tex. July 18, 2019) (recommending dismissal of plaintiff's claims against police officers in their official capacities, concluding they were redundant of his claims against the city), *R. & R. adopted by* 2019 WL 3716598 (N.D. Tex. Aug. 6, 2019).

Similarly, Royal's ADA and RA claims against Haggard in his official capacity are duplicative of his claims against the City based on the same allegations and should also be dismissed. *See, e.g.*, *Rojas v. City of Grand Prairie*, No. 3:18-CV-1776-K, 2019 WL 1115052, at *1, *6 (N.D. Tex. Mar. 11, 2019) (dismissing plaintiff's ADA claim against former supervisor in his official capacity); *Lockridge v. Dall. Cnty. Schs.*, No. 3:10-CV-1175-O, 2010 WL 5538436, at *1, *4–5 (N.D. Tex. Dec. 8, 2010) (recommending dismissal with prejudice as to plaintiff's ADA claims against defendant (president of the board of trustees for school district) in his official capacity because such claim was redundant of claim against school board), *R. & R. adopted by* 2011 WL 52735 (N.D. Tex. Jan. 6, 2011); *see also Stanek v. St. Charles Cmty. Unit Sch. Dist. No.*

*303*, 783 F.3d 634, 644 (7th Cir. 2015) (affirming district court's dismissal of ADA/RA claims against defendant-teachers in their official capacities, where plaintiffs also sued school district); *Joyce v. Texas*, No. 1:20-CV-00145-H-BU, 2023 WL 6020728, at *7 (N.D. Tex. Jan. 25, 2023) ("[W]hen an ADA lawsuit brings the same claim against both a state entity and state officials employed by the entity in their official capacities, a court may dismiss the state officials as redundant parties.").[9]

### B. Royal has not pleaded adequate facts demonstrating the City violated his rights under the ADA and RA.

Royal contends that the City failed to accommodate and intentionally discriminated against him in violation of the ADA and RA. *See* 2d Am. Compl. 19–23.

"Title II of the ADA provides: '[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'"[10] *Windham v. Harris Cnty.*, 875 F.3d 229, 234–35 (5th Cir. 2017) (quoting 42 U.S.C. § 12132). A "public entity" includes local governments. § 12131(1)(A). To state a viable prima facie claim for disability discrimination, a plaintiff must establish the following: (1) "he is a qualified individual within the meaning of the ADA;" (2) the public entity is excluding him "from participation in, or" denying him the "benefits of, services, programs, or activities for which the public entity is responsible, or" the entity is otherwise discriminating against him; "and (3) that

---

[9] *See infra* Section III.C for discussion of Royal's putative excessive force claim against Haggard.

[10] "The language in the ADA generally tracks the language set forth in the RA." *Delano-Pyle v. Victoria Cnty.*, 302 F.3d 567, 574 (5th Cir. 2002). "Thus, '[j]urisprudence interpreting either section is applicable to both.'" *Id.* (citation omitted). The undersigned therefore primarily refers to Royal's ADA claim, but the analysis applies equally.

such exclusion, denial of benefits, or discrimination is by reason of his disability."[11] *Windham*, 875 F.3d at 235 (quoting *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004)). The ADA and RA's "provisions allow individuals to sue local governments for disability discrimination committed by police in non-exigent circumstances."[12] *Id.*; *see* § 12133. But a plaintiff may only recover compensatory damages under the ADA and RA "upon a showing of intentional discrimination." *Delano-Pyle*, 302 F.3d at 574.

A plaintiff may satisfy the third prong of a Title II claim under a failure-to-accommodate theory.[13] *See Windham*, 875 F.3d at 235. To state a viable claim, "a plaintiff must prove: (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations." *Sligh v. City of Conroe*, 87 F.4th 290, 304 (5th Cir. 2023) (per curiam) (quoting *Ball v. LeBlanc*, 792 F.3d 584, 596 n.9 (5th Cir. 2015)). "Plaintiffs ordinarily satisfy the knowledge element by showing that they identified their disabilities as well as the resulting limitations to a public entity or its employees and requested an accommodation in direct and specific terms." *Id.* (quoting *Smith v. Harris Cnty.*, 956 F.3d 311, 317 (5th Cir. 2020)). If a plaintiff does not "request an accommodation in this manner, he can prevail only by showing that 'the disability, resulting

---

[11] Under the RA, a plaintiff must show "that disability discrimination was the sole reason for the exclusion or denial of benefits," where under Title II, "discrimination need not be the sole reason." *Wilson v. City of Southlake*, 936 F.3d 326, 330 (5th Cir. 2019) (citation omitted).

[12] The City has not asserted that the exigent-circumstances exception set forth in *Hainze v. Richards*, 207 F.3d 795 (5th Cir. 2000) applies. *See* Mot. 4–6.

[13] Courts have recognized two types of ADA claims in the context of an arrest: "(1) wrongful arrest, where police arrest a suspect based on his disability, not for any criminal activity; and (2) reasonable accommodation, where police properly arrest a suspect but fail to reasonably accommodate his disability during the investigation or arrest, causing him to suffer greater injury or indignity than other arrestees." *Wilson v. City of Southlake*, No. 21-10771, 2022 WL 17604575, at *5 (5th Cir. Dec. 13, 2022) (quoting *Waller ex rel. Est. of Hunt v. City of Danville*, 556 F.3d 171, 174 (4th Cir. 2009)). Royal does not allege that the first scenario applies. *See* 2d Am. Compl. 3–4, 10 (acknowledging that he had an outstanding misdemeanor warrant from Mitchell County, Texas, and admitting that he evaded arrest during the daytime, an action for which he was convicted)

limitation, and necessary reasonable accommodation' were 'open, obvious, and apparent' to the entity's relevant agents." *Id.* (quoting *Smith*, 956 F.3d at 317–18).

The City asserts that Royal has failed to state claims under the ADA and RA for several reasons: (1) Royal "does not allege that [his mental health] condition substantially limits a major life activity"; and (2) Royal has not shown "he was excluded from participation in or denied the benefits of the services, programs, or activities of the City . . . , or was otherwise subjected to discrimination." Mot. 5. In the City's view, Royal's ADA and RA "claims are really claims under Section 573.001 of the Texas Health and Safety Code." *Id.* But Royal has not shown "how being taken to a mental hospital instead of jail is a right under the ADA or" RA. *Id.* at 6.

Royal's pleadings as to his alleged disability are not a model of clarity. Although Royal repeatedly references his "mental illness" (*see, e.g.*, 2d Am. Compl. 3–4, 18), he makes only one specific mention of his ostensible condition, i.e., "paranoid schizophrenia." *Id.* at 15. Royal's reference requires the City, and the Court, to assume that this condition is the disability from which Royal suffers. *Compare id.* ("Now that he is on his psych meds, Mr. Royal is better able to assess in hindsight how paranoid schizophrenia made him act so badly . . . ." (cleaned up)), *with id.* at 18 (making the conclusory assertion in connection with his ADA and RA claims that he "is a member of a protected class (person with a mental illness)").

Nevertheless, "[w]hether a plaintiff is disabled under the ADA is not a demanding question." *Epley v. Gonzalez*, 860 F. App'x 310, 312–13 (5th Cir. 2021) (per curiam) (citing § 12102(4)(A)). "A qualifying disability under the ADA is either (1) 'a physical or mental impairment that substantially limits one of more of the major life activities of the individual'; (2) 'a record of such an impairment'; or (3) 'being regarded as having such an impairment.'" *Id.* (quoting

§ 12102(2)). "An individual may establish coverage under any one or more of the three prongs of the definition of 'disability' . . . ." 28 C.F.R. § 35.108(a)(1)(ii).

"[A]n impairment qualifies under the Act 'if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population,' but it 'does not need to prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting.'" *Epley*, 860 F. App'x at 313 (quoting 28 C.F.R. § 35.108(d)(v)). And "it should easily be concluded that [schizophrenia] . . . will, at a minimum, substantially limit . . . brain function," a major life activity. § 35.108(d)(2)(iii)(K).

Royal avers that at the time of the incident, he "was talking gibberish," "hearing voices," and "not in control of his faculties." 2d Am. Compl. 3, 19, 21 (emphasis omitted). Moreover, Royal states that he "has a history of mental health issues that dates back for at least five (5) years," and SPD officers knew of his mental health condition because they had "interacted with him several times in the past." *Id.* at 3–4. Royal's allegations concerning his disability are sparse, but the undersigned concludes that dismissal is not appropriate on this basis, particularly given the ADA's directive that coverage should be construed broadly. § 12102(4)(A)–(B); *see Epley*, 860 F. App'x at 313–14 (concluding plaintiff sufficiently alleged he had a qualified disability under the ADA, where plaintiff's "factual allegations illustrate[d] how [his] conditions affected his life at the time of the underlying incident," plaintiff pleaded he had a record of impairment, and the regulations "make clear that [plaintiff's mental impairment] will, in *most* cases, sufficiently limit a major life activity"); *Peña Arita v. Cnty. of Starr*, No. 7:19-cv-00288, 2020 WL 5505929, at *4 (S.D. Tex. Sept. 11, 2020) ("[A] mental or behavioral disorder manifesting in erratic behavior . . . substantially impairs the ability to care for oneself and indicates an impairment to normal or

healthy brain functioning."); *Thomas v. Strack*, No. 2:22-CV-00170, 2022 WL 19571183, at \*1, \*16 (S.D. Tex. Dec. 13, 2022) ("accepting [p]laintiff's allegations as true" and concluding that he sufficiently alleged "he suffer[ed] from mental and physical impairments that greatly limit his daily life activities," including diagnoses of "major depressive disorder with psychotic features, schizophrenia, and post-traumatic stress disorder," thereby demonstrating he was a qualified individual under the ADA and RA), *R. & R. adopted by* 2023 WL 3044608 (S.D. Tex. Apr. 21, 2023).

Royal has not, however, pleaded sufficient facts demonstrating that the City discriminated against him by reason of his disability. His allegations concerning both theories—failure to accommodate and discrimination—are almost wholly conclusory, merely reciting elements of the claim. *See* 2d Am. Compl. 22–23. He makes only three specific, but related, contentions: that the City "failed to train . . . officers about handling situations involving citizens who suffer from mental illness," officers escalated or exacerbated Royal's crisis leading to the events, and officers took him to jail instead of taking him to a hospital. *Id.* at 3, 19–20, 22.

Turning first to Royal's failure-to-accommodate claim, he does not allege that he requested an accommodation or identified his disability and resulting limitations. Thus, he can only state a claim by asserting "that 'the disability, resulting limitation, and necessary reasonable accommodation' were 'open, obvious, and apparent' to the entity's relevant agents." *Sligh*, 87 F.4th at 304–05 (citation omitted). This exception is "narrow." *Windham*, 875 F.3d at 239.

The Court accepts as true, as it must at this stage, Royal's allegation that "[t]he officers knew they were dealing with a mentally ill individual who was screaming and yelling and even trying to call 911 to get help because he feared for his safety." 2d Am. Compl. 19; *see id.* at 3 ("[A]fter police stopped him . . . , . . . Royal was talking gibberish and exhibiting signs of mental

illness."), 31 (claiming Haggard "knew [officers] were dealing with someone labeled 'crazy' by the on-site witness"), 39 (stating that Haggard was "fully aware [he was] dealing with a man experiencing a mental health crisis"). "But knowledge of a disability," and even its resulting limitation, "is different from knowledge of the necessary accommodation." *Windham*, 875 F.3d at 238. To state a claim, Royal must plead facts showing "that all three were or should have been obvious." *Id.* He has not done so.

Royal's conclusory allegations fail to establish that any reasonable accommodation was open and obvious. "'When dealing in the amorphous world of mental disability,' it will often be impossible for a[] [defendant] to identify a[] [plaintiff's] specific disabilities, limitations, and possible accommodations." *Jin Choi v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 633 F. App'x 214, 216 (5th Cir. 2015) (per curiam) (citation omitted). Even assuming Defendants knew of Royal's disability and its resulting limitations, Royal has not shown that the proposed reasonable accommodations—"talking calmly and attempting to get [Royal] to voluntarily go to the hospital," and admitting him to a mental hospital, as opposed to taking Royal to jail—were open, obvious, and apparent, particularly given Royal's admitted refusal to comply with orders and continued evasion of officers. *See, e.g.*, 2d Am. Compl. 7 (acknowledging that officers spent "nearly 40 minutes" trying to identify Royal while he remained in his vehicle, not "wish[ing] to be identified nor cooperate"), 10 (conceding that he evaded officers during the Daytime Evading), 11 (stating that during the Evening Evading, he drove "a tractor into a large moat on a woman's ranch"), 20 (relying on Texas law and merely stating that "it was clear [Royal] did not understand what was going on"); *J.W. v. Paley*, 81 F.4th 440, 452 (5th Cir. 2023) (holding plaintiffs had not established son's limitations and accommodations were "open, obvious, and apparent" to defendant, where defendant had witnessed staff "attempt[] to orally de-escalate the situation" and evidence did not

show officer "was aware or should have been aware of a further accommodation that would have calmed [son] down"); *Smith v. Bexar Cnty.*, No. SA-23-CV-00623-JKP, 2023 WL 7289398, at *8 (W.D. Tex. Nov. 2, 2023) (granting defendant's motion to dismiss ADA and RA claims, explaining that even though plaintiff alleged he told officer he was dyslexic, "knowledge of a disability is different from knowledge of the resulting limitation or necessary accommodation"); *Patrick v. Martin*, No. 2:16-CV-216-D-BR, 2020 WL 4040969, at *42 (N.D. Tex. July 16, 2020) (finding that despite plaintiff's argument that prison "should have accommodated [son's] known mental disability with a special housing assignment or a closely monitored shared cell," she had not shown that prison or its "employees knew or should have known that the limitations resulting from [son's] disability required him to be single-celled or monitored more closely than other inmates"); *cf. Roell v. Hamilton Cnty., Ohio/Hamilton Cnty. Bd. of Cnty. Comm'rs*, 870 F.3d 471, 489 (6th Cir. 2017) (concluding county was entitled to summary judgment on plaintiff's ADA claim, where her "proposed accommodations—that the deputies use verbal de-escalation techniques, gather information from the witnesses, and call EMS services before engaging with [her,]" were unreasonable given that plaintiff posed a threat to officers and others).

To the extent Royal intends to assert a claim for disability discrimination (as opposed to failure to accommodate), it also fails. Other than as discussed above, Royal does not plead any facts showing Defendants discriminated against him by reason of his disability. *See* 2d Am. Compl. 18–23 (claiming generically that Defendants "intentionally discriminated against him" but failing to specify facts in support). The undersigned therefore recommends the district judge grant Defendants' Motion to Dismiss Royal's ADA and RA claims.

**C. The Court does not understand Royal as alleging an excessive force claim against Haggard in his individual capacity.**

Individual capacity "suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Graham*, 473 U.S. at 165. "On the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Id.* at 166. Official capacity suits, on the other hand, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Id.* at 165 (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 n.55 (1978)). Thus, a plaintiff must establish that the governmental entity was "a moving force" behind the alleged unconstitutional action—i.e., that "the entity's policy or custom must have played a part in the violation of federal law." *Id.* at 166 (internal quotation marks and citations omitted).

"When it comes to defenses to liability, an official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses, such as objectively reasonable reliance on existing law"—e.g., qualified immunity. *Id.* at 166–67. But "[t]he only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment." *Id.* at 167.

The undersigned has recommended dismissal of the § 1983 official capacity claims against Haggard as redundant. *See supra* Section III.A. Nevertheless, Haggard asserts that "[i]f any individual claims against" him proceed—including the excessive force claim—he is entitled to qualified immunity. Mot. 8. The undersigned therefore briefly discusses whether Royal has asserted an individual capacity claim against Haggard.

Royal expressly alleges an excessive force claim against Haggard only in his official capacity. *See, e.g.*, 2d Am. Compl. 1, 23–24. As such, the Court need not examine the course of

proceedings to determine whether Royal has pleaded an individual capacity claim against Haggard. *See Graham*, 473 U.S. at 167 n.14 (explaining that where a plaintiff's complaint does "not clearly specify whether officials are sued personally, in their official capacity, or both," a court should look to the "course of proceedings" to determine "the nature of the liability sought to be imposed" (citation omitted)); *White v. Ellis Cnty. Comm'rs Ct.*, No. 3:19-CV-3017-M-BH, 2021 WL 2446200, at *3 n.4 (N.D. Tex. May 19, 2021) ("Because [p]laintiff expressly states that he sues the defendants in their official capacities, it is not necessary to examine the course of proceedings to determine the capacity in which he sues them."), *R. & R. adopted by* 2021 WL 2435352 (N.D. Tex. June 15, 2021); *Horizon Christian Sch. v. Brown*, No. 21-35947, 2022 WL 17038695, at *2 (9th Cir. Nov. 17, 2022) (rejecting "[p]laintiffs' argument that the 'course of proceedings' show[ed] they also sued [governor] in her individual capacity" because complaint clearly specified plaintiffs' were suing governor only in her official capacity).

This conclusion is reinforced by several factors. First, Royal is represented by counsel and his pleadings are not, therefore, entitled to the same liberal construction as that of a pro se plaintiff. *See, e.g.*, *Woodfox v. Cain*, 609 F.3d 774, 792 (5th Cir. 2010) ("Although [the Fifth Circuit] liberally construe[s] pro se pleadings, [it] do[es] not afford such latitude to pleadings prepared by counsel."); *Nwokedi v. Holder*, 396 F. App'x 85, 86 (5th Cir. 2010) (per curiam) ("[Plaintiff], who is represented by counsel, is not entitled to a liberal construction of his arguments."). Moreover, Royal's allegations are subject to at least two interpretations: (1) he is only alleging a municipal liability claim against the City based on the alleged excessive uses of force the day of his arrest; and (2) he is asserting an individual capacity claim against Haggard for excessive force, as well as a municipal liability claim against the City based on the same incident. *See* 2d Am. Compl. 3–8,

10–46.  Some examples from Royal's Second Amended Complaint highlight the confusing nature of his pleading:

- Royal expressly sues Haggard only his official capacity. *Id.* at 1.

- Royal discusses purported excessive uses of force by several SPD officers, most of whom he does not specifically name as defendants. *See id.* at 1, 4–8, 9–10. Thus, Royal could be merely discussing Haggard's alleged actions in the same manner—to describe the events that form the basis of his municipal liability claim.

- Royal specifically lists three "counts" under the heading "Causes of Action," including an excessive force claim. *Id.* at 18–44 (emphasis omitted). Under the excessive force claim, however, he reiterates that "Defendants (the City of Snyder, Texas, and Chief Brian Haggard, *in his official capacity*) . . . jointly, severally, or both," violated his Fourth Amendment rights. *Id.* at 23–24 (emphasis added). Under this same count, Royal "contends that Qualified Immunity does not apply to *Defendants* in this case," and he proceeds to discuss a municipal liability claim, thereby implying that he is not seeking to hold Haggard individually liable. *Id.* at 31–37 (emphasis omitted and added). Yet Royal also addresses whether a "reasonable official would conclude the actions were . . . wrongful"—i.e., one prong of the qualified immunity analysis, which only applies to claims against individual officers. *Id.* at 37–39 (emphasis omitted). Then again, he concludes by stating "Chief Haggard's actions violated the law and thus abrogate[d] qualified immunity. For these reasons, the City was deliberately indifferent to [Royal's] constitutional rights, as a matter of law." *Id.* at 39. Royal's closing reinforces one possible reading of Royal's claims—that he is suing Haggard personally for his allegedly unconstitutional conduct and also suing the City under a municipal liability theory.

- Royal does not specifically seek damages against the City based on the alleged *Monell* violations, but he generally asks for damages against all Defendants for their purported use of force. *Id.* at 45–46.

In sum, Royal sued Haggard in the wrong capacity if Royal intends to hold him personally liable for any alleged acts of excessive force. The undersigned does not find that it would be appropriate to read Royal's Second Amended Complaint as asserting an excessive force claim against Haggard in his individual capacity because (1) Royal is represented by counsel, and (2) he expressly sued Haggard in his official capacity. If Royal ultimately amends his complaint, he will have the opportunity to cure the deficiency, if one exists.

### D.  Royal has failed to state a plausible municipal liability claim against the City.

Royal asserts that the City maintains unconstitutional policies and failed to properly train its officers, resulting in his constitutional harm.  *See* 2d Am. Compl. 16–17, 31–37, 40–41. Specifically, Royal contends that the City, via SPD:

1.  maintained policies or customs "of excessive force," failed to prevent officers from using "deadly force against individuals when the officer is not at risk of imminent serious bodily injury or death," and "refus[ed] to discipline SPD officers involved in instances of excessive force";

2.  "failed to properly train or supervise" officers "not to use intermediate or deadly force against an individual who does not place the officer or another at risk of imminent serious bodily injury or death" and "on mental health issues and how to implement de-escalation and communication tactics during incidents";

3.  "failed to institute proper procedures to ensure that SPD officers use appropriate de-escalation and communication tactics in situations in which it is known that an unarmed resident has a mental illness;" and

4.  "failed to classify any officer-involved shootings as unjustified—particularly those involving unarmed victims."

*Id.* at 33–35 (cleaned up); *see id.* at 40–41.

The City seeks dismissal of Royal's municipal liability claims. Mot. 11–15. It argues that Royal has not shown "a policy or custom." *Id.* at 11. "At best, he has alleged an isolated incident," which is insufficient. *Id.* at 11–12. The City further contends that Royal has not pleaded facts demonstrating "a causal link between any policy and the alleged constitutional violation." *Id.* at

13. And as to Royal's failure-to-train claim, the City asserts it fails for essentially the same reasons. *Id.* at 13–15.

"A municipality is a 'person' subject to suit under Section 1983." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 166 (5th Cir. 2010) (quoting *Monell*, 436 U.S. at 690). A municipality cannot, however, "be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. Instead, "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *see Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) ("The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." (emphasis in original)).

To state a viable municipal liability claim, also known as a *Monell* claim, a plaintiff must demonstrate: "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). As to the first element, "a policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority." *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010). A plaintiff may also meet the first element by demonstrating a custom, which is "a persistent, widespread practice of [municipal] officials or employees" that "is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski*, 237 F.3d at 579 (citation omitted). The third prong requires a plaintiff to show "that the municipal action was taken with the requisite degree of culpability," as

well as "a direct causal link between the municipal action and the deprivation of federal rights." *Valle*, 613 F.3d at 542 (citation omitted). That is, "a plaintiff must 'show[] either that the policy itself was unconstitutional' or that it 'was adopted with deliberate indifference to the known or obvious fact' that a specific constitutional violation would follow." *Liggins v. Duncanville*, 52 F.4th 953, 955 (5th Cir. 2022) (citation omitted).

In limited circumstances, a plaintiff's allegation that a municipality failed to train its employees "may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *City of Canton v. Harris*, 489 U.S. 378, 387, 390 (1989); *see Hobart v. City of Stafford*, 784 F. Supp. 2d 732, 750 (S.D. Tex. 2011) (explaining that a city's failure to train its employees may constitute a "policy" in narrow instances (quoting *City of Canton*, 489 U.S. at 389)).

Where the "policy" concerns an alleged failure to train employees, a plaintiff must demonstrate that " (1) the city failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Edwards v. City of Balch Springs*, 70 F.4th 302, 312 (5th Cir. 2023) (internal quotation marks and citation omitted). "[F]or liability to attach based on an inadequate training claim, a plaintiff must allege with specificity how a particular training program is defective." *Id.* (citation omitted).

Under either theory, the requisite deliberate indifference standard is "high" and requires a plaintiff to show the municipality completely disregarded "the risk that a violation of a particular constitutional right would follow the decision." *Id.* (citation omitted). "To show deliberate indifference [in a failure-to-train claim], a plaintiff normally must allege a pattern of similar

constitutional violations by untrained employees." *Id.* (citation omitted). Similarly, a plaintiff alleging an unconstitutional policy claim must either identify a written policy or "point[] to similar incidents that are 'sufficiently numerous' and have 'occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees.'" *Martinez v. Nueces Cnty.*, 71 F.4th 385, 389 (5th Cir. 2023) (citation omitted). "[T]he pattern of examples must have 'similarity' and 'specificity.'" *Id.* (quoting *Davidson v. City of Stafford*, 848 F.3d 384, 396 (5th Cir. 2017)).

A single incident may, however, supply the requisite deliberate indifference under either theory when the constitutional harm was a "plainly obvious consequence of the actor's single decision" (*Liggins*, 52 F.4th at 955 (internal quotation marks and citation omitted)), or if the "actor was provided no training whatsoever." *Edwards*, 70 F.4th at 313 (citation omitted); *see Davidson*, 848 F.3d at 395 ("In 'rare circumstances,' a single unconstitutional action may be sufficient to impose municipal liability 'if undertaken by the municipal official or entity possessing final policymaking authority for the action in question.'" (citation omitted)); *Brown v. Bryan Cnty.*, 219 F.3d 450, 462 (5th Cir. 2000) (explaining "that a single decision by a policy maker may, under certain circumstances, constitute a policy for which the [municipality] may be liable"). "[R]egardless the theory of municipal liability, '[t]o proceed beyond the pleading stage, a complaint's description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.'" *Mason v. City of Mansfield*, No. 3:20-cv-2061-N-BN, 2023 WL 3805333, at *7 (N.D. Tex. May 3, 2023) (quoting *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018)), *R. & R. adopted by* 2023 WL 3807034 (N.D. Tex. June 2, 2023).

### 1. *Royal's factual allegations are too sparse to determine whether any underlying claim for excessive force is* Heck-*barred.*

As an initial matter, a plaintiff must allege an underlying constitutional violation to state a viable *Monell* claim. *Hicks-Fields v. Harris Cnty.*, 860 F.3d 803, 808 (5th Cir. 2017). The undersigned concludes Royal's *Monell* claims fail for other reasons, as discussed below. But the undersigned briefly addresses Royal's foundational constitutional claim because Defendants discuss its viability under *Heck. See* Mot. 15–16.

Royal contends that SPD officers, including Haggard, used excessive force during the November 2022 incident.[14] Defendants counter that Royal's claim is *Heck*-barred. In *Heck v. Humphrey*, the United States Supreme Court held that a plaintiff seeking to recover damages for harm "caused by actions whose unlawfulness would render a conviction or sentence invalid" must first "prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. 477, 486–87 (1994) (citation omitted). Where a favorable judgment in the civil rights action would "necessarily imply the invalidity of [a prisoner's] conviction or sentence" in his criminal case, the civil claim is barred unless the criminal conviction has been reversed or otherwise declared invalid. *Id.* at 487.

In addressing the SPD officers' alleged conduct during the Daytime UOF (*see* 2d Am. Compl. 4–5, 7–8), Royal concedes that these events resulted in his conviction for aggravated

---

[14] Royal contends Haggard used deadly force. *E.g.*, 2d Am. Compl. 14, 25. "When an officer uses deadly force, [the] 'objective reasonableness' balancing test is constrained." *Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004). "It is objectively unreasonable to use deadly force 'unless it is necessary to prevent [a suspect's] escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.'" *Id.* (quoting *Tennessee v. Garner*, 471 U.S. 1, 3 (1985)). "[W]hether a particular use of force is 'deadly force' is a question of fact, not one of law." *Id.* Because the Court does not reach evaluation on the merits of Royal's excessive force claim, it does not resolve the question of whether the deadly force standard applies.

assault and evading arrest. *Id.* at 4, 7–8, 27 (stating that "he engaged the gas pedal" while Officer

Rackley's hand was in the broken window and left "the scene," causing injury to Rackley's hand).

According to Royal, however, he is not alleging officers violated his constitutional rights during

this portion of the incident. *Id.* at 8 ("This lawsuit concerns excessive force orchestrated by Chief

Haggard primarily focusing on the evading arrest charge that was never prosecuted and/or

dismissed"—i.e., the Evening Evading and UOF. (emphasis omitted)), 11 ("[Royal] alleges that

officer's excessive use of force began after [Royal's] alleged assaulting of police officer and

evading where Officer Rackley was victim." (emphasis omitted)). Thus, although it appears any

excessive force claim arising out of the Daytime UOF may be *Heck*-barred, the undersigned limits

these findings to Royal's allegations concerning the Evening UOF.[15] *See, e.g.*, *Hainze*, 207 F.3d

at 798–99 (holding that plaintiff's excessive force claim based on officers' restraint, "up to and

including deadly force, cannot be deemed excessive" because plaintiff was convicted of

aggravated assault in connection with same incident).

Under Texas law, a person evades arrest or detention "if he intentionally flees from a person

he knows is a peace officer or federal special investigator attempting lawfully to arrest or detain

him." TEX. PENAL CODE § 38.04(a). Defendants argue that any excessive force claim arising from

the evening incident is also barred by *Heck* because Royal "was still evading arrest from the

morning." Mot. 16. In Defendants' view, Royal's Daytime Evading conviction is not distinct

from any excessive force claim arising from the Evening UOF. *Id.* at 16–17.

"[W]hether an excessive-force claim is barred under *Heck* is 'analytical and fact-intensive'

and requires a court to consider whether 'success on the excessive force claim *requires* negation

---

[15] As discussed herein, the undersigned recommends that Royal be given the opportunity to amend his claims. If he does, Royal should plainly and concisely allege the facts upon which he is basing his claims and avoid including extraneous details so that Defendants and the Court can adequately evaluate the precise nature of his claims.

of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal conviction.'" *Welsh v. Correct Care Recovery Sols.*, 845 F. App'x 311, 316 (5th Cir. 2021) (quoting *Bush*, 513 F.3d at 497). "Put simply, there is no *Heck* bar if the alleged violation occurs 'after' the cessation of the plaintiff's misconduct that gave rise to his prior conviction." *Aucoin v. Cupil*, 958 F.3d 379, 382 (5th Cir. 2020).

Royal simply has not pleaded enough facts for the undersigned to decipher the timing of any Evening UOF, its continuity with the Daytime UOF, and Royal's specific conduct leading up to, and in connection with, the latter purported force. Royal asserts that "[h]e was not resisting" and "had his hands up," but he also indicates that he "had driven a tractor into a large moat on a woman's ranch" at the time of the alleged force. 2d Am. Compl. 10–11. That is, Royal's assertions are inconclusive concerning whether he had ceased fleeing from SPD officers at the time Haggard allegedly ordered them to shoot Royal with rubber bullets. *See* 2d Am. Compl. 10–11. In sum, Royal has not included enough facts to evaluate *Heck*'s applicability.

However, the Court's inability to sufficiently address any *Heck* issues, due to the vagueness of Royal's pleadings, ultimately poses no obstacle to resolving this claim. Assuming, without deciding, that Royal's Evening UOF claim is not *Heck*-barred, the undersigned nevertheless recommends dismissal of any *Monell* claim for the reasons described below.

### 2. Policy

Royal's *Monell* claims based on the allegedly unconstitutional policies fail for several reasons. First, as the City observes, Royal has failed to plausibly allege the City maintains a written unconstitutional policy. Mot. 11; *see, e.g.*, 2d Am. Compl. 16 (asserting the City "failed to classify any officer-involved shootings as unjustified" but offering no supporting facts (cleaned up)), 34 (claiming the City maintains a "policy of excessive force applied to mentally ill individuals" but

failing to describe that policy), 33 (stating "the City's alleged policy [is] to pursue nonviolent suspects and break their windows and tase them without regard to any sort of mental health issues," along with a policy "that high speed chases [are] not . . . worth the risk and the money expended by the municipality"—i.e., the specific facts of the incident with Royal).[16]  Royal also does not attempt to establish "a practice 'so persistent and widespread as to practically have the force of law.'" *Jackson v. Valdez*, 852 F. App'x 129, 135–36 (5th Cir. 2021) (per curiam) (affirming district court's 12(b)(6) dismissal of plaintiff's policy claim even where plaintiff alleged several similar incidents, as these examples did not "support the reasonable inference that" county had a persistent unconstitutional custom); *see Prince v. Curry*, 423 F. App'x 447, 451 (5th Cir. 2011) (per curiam) ("The existence of only one or, at most, two other similarly situated defendants does not plausibly suggest that . . . [c]ounty ha[d] a policy or custom . . . 'so persistent and widespread as to practically have the force of law.'" (citation omitted)).

Instead, Royal points to an isolated incident. *See* 2d Am. Compl. 22 (asserting generically that the City "failed to train its police officers about handling situations involving citizens who suffer from mental illness" but pointing to no incidents other than his own), 31 (describing Defendant Haggard's alleged conduct), 33 (claiming that the unconstitutional policy is the specific circumstances at issue in Royal's case), 34 (making the bald assertion that the City has a pattern of unconstitutional conduct but pleading no facts in support), 41–42 (alleging in conclusory

---

[16] Royal's policy claims track verbatim those raised in *Sanchez v. Gomez*, 283 F. Supp. 3d 524, 530–31 (W.D. Tex. 2017).  In that case, the court denied the city's Rule 12(b)(6) motion, concluding that plaintiffs had plausibly pleaded *Monell* claims. *Id.* at 548.  Unlike Royal, however, the plaintiffs in *Sanchez* "provide[d] numerous factual allegations to support their claims against" the city. *Id.* at 531.  For example, as to the city's purported failure to classify any officer-involved shootings as unjustified, plaintiffs asserted "that from 2012–2016, [the police department], headed by Chief Allen, classified zero police shootings as 'unjustified,' categorizing them instead as 'justified' and in one instance as 'other' homicides." *Id.* at 541.  They also averred that the city maintained a widespread practice of excessive force, as well as using excessive force against mentally ill suspects, supporting their claims with statistics and describing "nine specific instances." *Id.* at 535.  Royal, on the other hand, merely parrots the allegations from *Sanchez* without providing factual support.

statements that the consequences of the City's purported policies were "known and obvious" and that the City turned a blind eye "to a long and wretched history of constitutional violations [by] its employees"). That is, Royal seeks to hold the City liable for an allegedly unconstitutional policy under the single decision exception.

Application of the "single decision" exception "requires 'unmistakable culpability and clearly connected causation.'" *Liggins*, 52 F.4th at 955 (citation omitted). Haggard's singular decisions the day of the incident—including allegedly ordering officers to break Royal's window and tase him after he refused to exit the vehicle and to use rubber bullets, as well as Haggard shooting at Royal as he fled—fail to establish the requisite culpability. 2d Am. Comp. 10–11, 31.

Royal concedes that he not only fled from officers but in the process used his vehicle to commit aggravated assault against a peace officer. *See id.* at 7–8. Later, when SPD officers discovered Royal, he "had driven a tractor into a large moat on a woman's ranch." *Id.* at 11. Haggard allegedly ordered SPD officers to fire rubber bullets at Royal. *Id.* Making swift decisions in the face of an individual suffering from mental illness, behaving erratically, and with a propensity to flee does not "evidence an intentional ignorance of all the associated risks." *Liggins*, 52 F.4th at 956; *see Pembaur*, 475 U.S. at 483 (holding that a municipality can be liable when "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question"). At best, Royal's allegations show that Haggard could have made better or different decisions. But he has not pleaded facts showing that at the time of the events, he "had the 'requisite degree of culpability,' namely that he completely disregarded any risk to [Royal's] Fourth Amendment rights." *See Liggins*, 52 F.4th at 956–57 ("At worst, failing to wait [for crisis intervention team to assist plaintiff, who was suffering from mental health crisis] or fully recognize

the risk of harm to [plaintiff's] rights was negligent. But, mere negligence isn't enough to prove deliberate indifference.").

Finally, Royal contends that the City has a policy of excessive force concerning mentally ill individuals because it ratified the alleged excessive force by SPD officers by failing to discipline them. 2d Am. Compl. 34–35. Royal's assertion is devoid of supporting facts such that the Court could dismiss for that reason alone. But it also fails on the merits.

The ratification theory is limited "to 'extreme factual situations.'" *Peterson v. City of Fort Worth*, 588 F.3d 838, 848 (5th Cir. 2009) (citation omitted). For example, in *Grandstaff v. City of Borger*, the Fifth Circuit held that the city ratified officers' decision to "pour[] . . . gunfire" at a vehicle driven by, as it turned out, an innocent victim. 767 F.2d 161, 165, 168, 171 (5th Cir. 1985). "*Grandstaff* . . . does *not* stand for the broad proposition that if a policymaker defends his subordinates and if those subordinates are later found to have broken the law, then the illegal behavior can be assumed to have resulted from an official policy." *Coon v. Ledbetter*, 780 F.2d 1158, 1161 (5th Cir. 1986). Instead, the holding is based "on a highly peculiar set of facts": "the innocent rancher was killed when the police shot him in the back as he was emerging from his own vehicle" and "after this 'incompetent and catastrophic performance,' . . . the officers' supervisors 'denied their failures and concerned themselves only with unworthy, if not despicable, means to avoid legal liability.'" *Id.* (quoting *Grandstaff*, 767 F.2d at 166, 171).

Royal does not plead *any* facts, much less "extreme" ones, such that the City's alleged ratification of its officers' conduct can be said to constitute a policy or custom. *See Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998) ("The shooting of [plaintiff], who was fleeing police pursuit, hardly rises to the level of the 'extraordinary factual circumstances' presented in *Grandstaff*—particularly given the absence of evidence suggesting a culture of recklessness in the

[police department].").  Indeed, Royal baldly asserts in passing that the City did not discipline officers involved in the November 2022 incident. *See* 2d Am. Compl. 17, 34–35, 41–42.  Absent from his allegation, however, are any specific facts, including the who, what, where, when, why, and how-type assertions.  As such, any *Monell* claim based on a theory of ratification fails. *See, e.g., Davidson*, 848 F.3d at 396 (holding police chief's investigation of officers' unconstitutional conduct did not support ratification allegation because the conduct "was not sufficiently extreme to qualify for a finding of ratification" and chief merely determined that officers should not be subject to discipline); *Acosta v. Williamson Cnty.*, No. 1:21-cv-00615-LY, 2022 WL 757248, at *1, *7 (W.D. Tex. Mar. 11, 2022) (concluding plaintiff's allegations—that jailer "maliciously slammed" his hand in a cell door, fracturing his finger, and denying him any care for about half an hour—did "not rise to the level of the 'extreme factual situation' presented in *Grandstaff* to impose ratification liability on the [c]ounty"), *R. & R. adopted by* 2022 WL 20306091 (W.D. Tex. Apr. 26, 2022).

In sum, Royal's bare recitation of the elements of a policy claim, without factual support, requires dismissal.

### 3.  *Failure to Train or Supervise*

Royal claims that the City failed to supervise or "train officers concerning . . . mentally ill suspects" and on the proper use of force.[17]  2d Am. Compl. 33, 41.  Royal does not, however, describe the ways in which SPD's training is deficient; he merely alleges the City "failed to train its police officers about handling situations involving citizens who suffer from mental illness," which is insufficient. *See* 2d Am. Compl. 21–43; *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) (explaining that "a plaintiff must allege with specificity how a particular training

---

[17] "Because a failure-to-supervise claim is evaluated in the same way as a failure-to-train claim," the undersigned considers them together. *Trammell v. Fruge*, 868 F.3d 332, 344 n.11 (5th Cir. 2017).

program is defective" and "cannot prevail by styling their complaints about the specific injury suffered as a failure to train claim"); *Speck v. Wiginton*, 606 F. App'x 733, 736 (5th Cir. 2015) (per curiam) ("Complaints typically satisfy the first element by alleging facts related to the locality's actual training program."). Because Royal does not plead any facts showing the deficiencies in the City's training, he has not established the first failure-to-train element. *See, e.g., Trammell*, 868 F.3d at 345 (affirming district court's grant of summary judgment on plaintiff's failure-to-train claim in part because plaintiff "fail[ed] to identify any specific inadequacies in [the city's] training materials or procedures which g[a]ve rise to his claim"); *Gallaher v. City of Maypearl*, No. 3:17-CV-1400-M, 2018 WL 700252, at *6 (N.D. Tex. Feb. 2, 2018) (dismissing plaintiff's failure to train claim in part because plaintiff did "not point to a specific training program or identify what training or supervision should have occurred to prevent the allegedly unconstitutional actions of" defendants); *Gaynier v. Hudson*, No. 3:16-CV-2314-D-BK, 2017 WL 6626347, at *3 (N.D. Tex. Nov. 16, 2017) ("Absent factual enhancement, [p]laintiff's allegations amount to little more than a claim that the [c]ity generally failed to train its police force, which is legally inadequate."), *R. & R. adopted by* 2017 WL 6621541 (N.D. Tex. Dec. 28, 2017).

Moreover, Royal's attempt to impose liability based on a single incident does not satisfy the deliberate indifference standard. The Fifth Circuit "has previously rejected attempts by plaintiffs to present evidence of isolated violations and ascribe those violations to a failure to train." *Zarnow*, 614 F.3d at 170; *Speck*, 606 F. App'x at 736 ("[Plaintiff] is . . . asking us to make the inference that a single alleged incident of misconduct means officers are inadequately trained"— an inference that "is at odds with the law against *respondeat superior* liability in section 1983 cases."). The exception is very narrow: "[t]he 'plaintiff must prove that the highly predictable consequence of a failure to train would result in the specific injury suffered." *Hutcheson v. Dallas*

*Cnty.*, 994 F.3d 477, 482 (5th Cir. 2021) (quoting *Valle*, 613 F.3d at 549).  Royal alleges that the City's "policies made it highly predictable that the particular violations alleged . . . would result," but he pleads no facts in support.[18]  *See* 2d Am. Compl. 22, 33–34, 41–42.  Based on the single incident involving Royal, the Court "[could] reasonably expect—if the need for training in this area was 'so obvious' and the failure to train was 'so likely to result in the violation of constitutional rights'—that [Royal] would be able to identify other instances of harm arising from the failure to train.  The fact that [he] d[oes] not do so undercuts [his] deliberate indifference claim."  *Conner v. Travis Cnty.*, 209 F.3d 794, 797 (5th Cir. 2000) (per curiam).

For these reasons, the undersigned recommends the district judge grant the City's motion as to all of Royal's *Monell* claims.

## IV.    <u>Leave to Amend</u>

Royal has not requested leave to amend his operative pleading.  Nevertheless, the Fifth Circuit has observed that "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."  *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).  Because the undersigned cannot conclude, at this stage, that amendment of Royal's claims would be futile, nor has he indicated he is unwilling to amend, Royal should be provided an opportunity to amend his Second Amended Complaint **as to his claims against the**

---

[18] Under the ADA/RA cause of action section, Royal indicates that the City provided no training for its officers on "handling situations involving citizens who suffer from mental illness." 2d Am. Compl. 22. While an allegation that the defendant provided "no training whatsoever" can satisfy the deliberate indifference element in narrow circumstances (*Hutcheson*, 994 F.3d at 483), the undersigned nevertheless concludes that Royal's allegation is conclusory, given the dearth of any supporting factual assertions.

**City and Haggard, movants herein**. If he so chooses, he must file the amended pleading within the fourteen-day objection period.

The undersigned cautions Royal, however, that any amended complaint *must* comply with Rule 8. Specifically, the amended pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "Each allegation must be simple, concise, and direct." FED. R. CIV. P. 8(d)(1). Royal's Second Amended Complaint is anything but short and plain. It spans forty-seven pages, contains legal argument and citations, repeats information, and references other purported constitutional violations for which Royal does not sue.[19] *See also supra* note 5. Moreover, this will be Royal's final opportunity to amend, as he has already twice done so.

## V.    Recommendation

If Royal does not file an amended complaint curing the deficiencies identified in this Report and Recommendation within the fourteen days allowed for objections, the undersigned recommends the United States District Judge (1) **GRANT** Defendants' Motion to Dismiss and dismiss Royal's claims against the City and Haggard with prejudice, and (2) **DENY as moot** their Motion for a More Definite Statement. ECF No. 34. If Royal timely files an amended complaint, however, the undersigned recommends the district judge **DENY as moot** Defendants' motions. *Id.* Finally, because Royal filed an amended complaint in response to Defendants' first Motion to Dismiss (ECF No. 18), the undersigned recommends the district judge **DENY as moot** that motion, as well as Royal's Motion for Leave to File an Amended Opposition to Defendants' first Motion to Dismiss. ECF No. 31.

---

[19] For example, Royal mentions violations of the Equal Protection Clause (2d Am. Compl. 4), wrongful arrest (*id.* at 5), and the Due Process Clause (*id.* at 19).

## VI.    **Right To Object**

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: May 24, 2024.

D. GORDON BRYANT, JR.
**UNITED STATES MAGISTRATE JUDGE**